UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WAYNE OBERRY                                           CIVIL ACTION

VERSUS                                                 NUMBER: 20-1738

KILOLO KIJAKAZI, ACTING                                SECTION: "S"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance Benefits ("DIB"). (Rec doc. 12, 13).

Wayne Oberry, Plaintiff herein, filed the subject application for DIB on March 26, 2018, alleging disability as of November 8, 2016. (Tr. pp. 12, 13). In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as hearing loss in the left ear and hearing problems in the right ear. (Tr. pp. 142). Plaintiff's application for SSI benefits was denied at the initial level of the administrative review process on August 29, 2018. (Tr. pp. 54-58). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on August 13, 2019 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 59, 60-61, 22-36). On October 4, 2019, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 7-21). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on April 24, 2020, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6).

It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In his cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

1. The ALJ erred in finding that Wayne Oberry had only a single "Severe" impairment "hearing loss", with no work related restrictions save for being "limited to moderate noise."

2. The ALJ's determination that Wayne Oberry had the sustained capacity for work activity was not supported by substantial evidence.

3. The ALJ failed to comment on the Proffer response submitted in this matter, which is a mandatory requirement pursuant to the HALLEX Manual.

(Rec. doc. 12-1, p. 2).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2020.

2. The claimant has not engaged in substantial gainful activity since November 8, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: hearing loss (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. He would be limited to moderate noise (office level).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 17, 1987 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2016, though the date of this decision (20 CFR 404.1520(g)).

(Tr. pp. 12, 13, 16, 17, 18).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than

3

a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made; and,

4

> 5. If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

As noted above, Plaintiff challenges the ALJ's decision to deny him Social Security benefits on three grounds. In the first of those, Plaintiff argues that the ALJ erred in finding that he suffered from only one severe impairment, hearing loss, and an accompanying work-related restriction of being limited to moderate noise. In advancing this challenge, Plaintiff first faults the ALJ for noting that "[a]s of February 11, 2019, the claimant reported only intermittent headache pain, improved with over-the-counter Ibuprofen" while minimizing that in the same treatment note, Plaintiff had described his headache pain as an "8" out of "10" at its worst which felt like a "deep throbbing," was associated with blurred vision, and had persisted over a four-month period.

5

The note in question was generated by Dr. Rahul Mehta pursuant to a referral from Dr. Susan Crawford who first summarized the course of Plaintiff's treatment over a roughly one and one-half year period. (Tr. pp. 458-460). At the updated evaluation on February 11, 2019, Plaintiff reported left-sided headaches "off and on" at a level of "8" at their worst, with the pain described as "deep throbbing," associated with blurring of vision, and improved with lying down or with taking Ibuprofen. (Tr. p. 460). However, ear drainage was denied and Plaintiff had not completed MRI or audiological studies. (*Id.*). Upon physical examination, Plaintiff was in no acute distress, speech reception thresholds were described as grossly normal, and the external ears had no auricle lesions or tenderness to palpation. An otoscopic examination revealed a left postauricular incision that was healing well with no edema or erythema. The right ear had a small tympanic membrane perforation and the left ear had a well-healed post-auricular incision, the external auditory canal was within normal limits, a graft was in place and was healing well, and a small epithellal pearl was present on the tympanic membrane. Vestibular system tests were negative. (Tr. pp. 460-465). Elsewhere in the medical records, blurry vision was denied. (Tr. pp. 272, 288, 292). It was the responsibility of the ALJ in the first instance to weigh and resolve any inconsistencies in the evidence before him. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Plaintiff additionally complains that the ALJ erred in failing to find that his gout was a severe impairment. In addressing this contention, the Court first notes that the only conditions that were identified by Plaintiff as limiting his ability to work in his application for DIB or related paperwork were hearing loss in the left ear and hearing problems in the

6

right ear. No mention was made of any limiting effects resulting from gout or, for that matter, blurring vision. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). That Plaintiff may have had high uric acid findings is not dispositive as the mere existence or diagnosis of a condition does not compel the conclusion that a claimant is disabled; rather, the proper inquiry is whether a particular condition results in functional limitations that preclude a claimant from performing his past work or any other work. *See Bordelon v. Astrue*, 281 Fed.Appx. 418, 422 (5th Cir. 2008). Even at this late date, Plaintiff fails to specifically identify any limitations that are attributable to his gout. *Heck v. Colvin*, 674 Fed.Appx. 411, 414 (5th Cir. 2017).

Finally, and perhaps most importantly, inasmuch as consideration of Plaintiff's application for Social Security benefits proceeded past step two of the §404.1520 sequential analysis and was not summarily denied at that step based on the fact that he did not suffer from a severe impairment, Plaintiff's first challenge provides no basis for disturbing the Commissioner's decision. *Dise v. Colvin*, 630 Fed.Appx. 322, 324 (5th Cir. 2015); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Wagner v. Astrue*, No. 08-CV-0519, 2010 WL 546739 at *7 (E.D. La. Feb. 12, 2010).

Plaintiff's second challenge to the Commissioner's decision is that the ALJ failed to properly consider whether he was able to work on a regular and continuing basis due to frequent hospitalizations and medical treatment.

The Fifth Circuit has clearly rejected the notion that an ALJ must in all cases make a separate finding that the claimant has the ability to maintain employment. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The applicable Social Security Regulation, 20

7

C.F.R. §404.1545, and Social Security Ruling ("SSR") 96-8p both make clear that an ALJ's assessment of a claimant's residual functional capacity ("RFC") to work is a measure of the claimant's capacity to perform work "on a regular and continuous basis," and in most cases the ability to maintain employment is adequately taken into account and subsumed by the RFC determination. *Dunbar v. Barnhart*, 336 F.3d 670, 671 (5th Cir. 2003); *Frank*, 326 F.3d at 619.

A review of the ALJ's opinion in this case does not reveal a misapprehension on his part that the ability to perform work on a regular and continuing basis is inherent in the definition of RFC. To the contrary, the ALJ quite clearly stated in his decision that "[a]n individual's residual functional capacity is his ability to do physical and mental work activities <u>on a sustained basis</u> despite limitations from his impairments," specifically citing §404.1545 and SSR 96-8p. (Tr. pp. 11-12) (emphasis added). In the course of summarizing the evidence before him and assessing Plaintiff's RFC, the ALJ stated at two different points in his decision (tr. pp. 13, 15) that he did not entirely credit Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. *Wilson v. Barnhart*, 210 Fed.Appx. 448, 451 (5th Cir. 2006) (ALJ need not make separate finding on absenteeism issue where he was aware of relevant VE testimony and discounted Plaintiff's subjective complaints); *Whitlow v. Astrue*, No. 08-CV-0159, 2010 WL 1995608 at *6 (M.D. Ala. May 17, 2010). The ALJ also specifically questioned the VE on the amount of absenteeism a typical employer would consider tolerable (tr. pp. 34-35), thus putting him in the position of incorporating into his RFC assessment an allowance for the absenteeism that he found was objectively supported. As noted by the Commissioner (rec. doc. 13-1, p. 6), three hospitalizations over a three year period does not translate to the level of absenteeism that

an employer would find unacceptable and thus render Plaintiff unable to maintain employment. The ALJ duly considered Plaintiff's hospitalizations and treatment and properly determined his RFC.

In his third and final challenge to the Commissioner's decision, Plaintiff argues that the ALJ failed to comment on Plaintiff's response to a proffer of evidence made by the ALJ, a clear error under the provisions of the Hallex Manual, which warrants a remand.

Subsequent to the hearing *de novo* on August 13, 2019, the ALJ secured additional medical evidence in the form of records from Dr. Crawford that he proposed to and were ultimately entered into the record as exhibit 7F. (Tr. pp. 437-468). By letter dated September 9, 2019, the ALJ invited Plaintiff to submit "...written comments concerning the evidence, a written statement as to the facts and law [Plaintiff] believe[d] appl[ied] to the case in light of that evidence, and any additional records [Plaintiff] wish[ed] [the ALJ] to consider." (Tr. pp. 182-183). Plaintiff then obtained and submitted additional records on his own (tr. pp. 469-516) and by correspondence of September 22, 2019, he made "proffer comments" on the evidence tendered by the ALJ in which he essentially argued that both sets of records were supportive of a finding of disability. (Tr. pp. 185-187). The ALJ discussed both sets of records at some length in his written decision of October 9, 2019. (Tr. pp. 14-15).

Citing §I-2-7-30(C)2 of the Hearings, Appeals and Litigation Manual ("HALLEX"), 1993 WL 643048, Plaintiff complains that the ALJ failed to address in the rationale of his written decision any of the "proffer comments" Plaintiff had made in response to the ALJ's tender of evidence. In *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit addressed adherence to the provisions of the Hallex Manual as follows:

9

> While HALLEX does not carry the authority of law, this court has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). If prejudice results from a violation, the result cannot stand. *Id.*

*Id.* at 459.

A showing of prejudice is thus necessary to prevail on a procedural error such as a violation of the Hallex Manual. *See*, e.g., *Dean v. Astrue*, No.. 07-CV-0881, 2009 WL 1505349 at \*6 (M.D. La. May 28, 2009).

Although Plaintiff summarily states that he was "prejudiced" by the ALJ's failure to specifically respond to Plaintiff's proffer comments, he fails to elaborate on what that prejudice is. He does not suggest what the ALJ's response to the proffer comments might or should have been and how that omission worked to his detriment. As noted above, the ALJ in the body of his decision discussed at some length both the medical records that the ALJ had obtained and proffered and those that Plaintiff had secured on his own. In doing so, there was at least minimal compliance with the cited Hallex provision and there is no reason to suspect that the ALJ's response would have been any different had it been more tailored. Plaintiff subsequently complained of the ALJ's failure to respond to his proffer comments to the AC but that tribunal likewise found that it provided no basis for changing the ALJ's decision. (Tr. pp. 1-6). To the extent that there may have been a technical violation of §I-2-7-30(C)(2),[1] no prejudice warranting a remand or reversal of Plaintiff's case is shown.

---

[1] Indeed, so obscure is the Hallex provision in question that the Court was able to locate only one case in which it was cited and even then, it was unnecessary to the resolution of the case. *Dunham v. Colvin*, No. 16-CV-0033, 2016 WL 7048691 at \*5 n. 3 (D. Me. Dec. 5, 2016); *adopted*, 2017 WL 27934 (D. Me. Jan. 3, 2017).

10

**RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's cross-motion for summary judgment be denied, that Defendant's cross-motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2]

New Orleans, Louisiana, this  3rd  day of  September , 2021.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.